■ In the Matter of CECELIA MACHESKI, Petitioner, v COMMISSIONER OF NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES et al., Respondents. [663 NYS2d 438] —Carpinello, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Greene County) to review a determination of respondent State Commissioner of Social Services which sustained a termination in petitioner's medical assistance coverage.

Petitioner, an elderly woman suffering from dementia and Alzheimer's disease, challenges a determination by respondent State Commissioner of Social Services, made after a fair hearing, to discontinue her medical assistance benefits because her household income had excess resources in the amount of $18,026.46. The instant CPLR article 78 proceeding having been transferred to this Court, we now confirm.

It is undisputed that petitioner, as a result of a personal injury action against the proprietors of Pavilion Adult Care Facility where she resided in 1990 and 1991, received a net settlement in the amount of $20,909.67. The settlement proceeds were then included in petitioner's resource calculation, thereby rendering her financially ineligible to qualify for medical assistance (*see*, 18 NYCRR 360-4.1, 360-4.8 [a] [1]; *see also*, Social Services Law § 366 [1] [a] [5]). Petitioner claims that the settlement proceeds are exempt from consideration in calculating her resources because they were the result of a legal action against a "de facto" residential health care facility (*see*, 18 NYCRR 360-4.9 [a] [5] [i]).

Pursuant to 18 NYCRR 360-4.9 (a) (5) (i),

"income received by an applicant/recipient in a residential health care facility [that] is not required to be applied toward the cost of medical care * * *

"[includes] money received as the result of a legal action against the residential health care facility because of improper and/or inadequate treatment".

Notably, this regulation encompasses a very narrow class of fa-

cilities (*compare, Matter of Gordon v Commissioner of State of N. Y. Dept. of Social Servs.*, 131 AD2d 96). For petitioner to reap the benefit of this regulation, she must be an applicant residing in a residential health care facility who received settlement proceeds from a legal action against that same facility. Such is not the case here.

Pursuant to an operating certificate issued by the State Department of Social Services in accordance with Social Services Law § 460-b, Pavilion is a private proprietary adult home. Under the pertinent statutory and regulatory schemes, there is a clear distinction between an adult care facility, which is defined, regulated and operated under the Social Services Law, and a residential health care facility, which is defined, regulated and operated under the Public Health Law.

An adult care facility is defined under the Social Services Law in the following manner: "a family type home for adults, a shelter for adults, a residence for adults, an enriched housing program or an adult home, which provides temporary or long-term residential care and services to adults who, though not requiring continual medical or nursing care as provided by facilities licensed pursuant to article [28] of the public health law * * * are by reason of physical or other limitations associated with age, physical or mental disabilities or other factors, unable or substantially unable to live independently" (Social Services Law § 2 [21]). (*See*, 18 NYCRR 485.2 [a].) An adult home is defined as "an adult-care facility established and operated for the purpose of providing long-term residential care, room, board, housekeeping, personal care and supervision to five or more adults unrelated to the operator" (18 NYCRR 485.2 [b]). Under the Public Health Law, a residential health care facility is defined as "a nursing home or a facility providing health-related service" (Public Health Law § 2801 [3]). Health-related service, in turn, is defined as "service in a facility or facilities which provide or offer lodging, board and physical care including, but not limited to, the recording of health information, dietary supervision and supervised hygienic services incident to such service" (Public Health Law § 2801 [4] [b]).

In our view, the Commissioner's determination that the settlement proceeds were not exempt from petitioner's eligibility calculation, based upon an interpretation of these pertinent statutory and regulatory provisions, was not arbitrary and capricious (*see, Matter of Howard v Wyman*, 28 NY2d 434, 438). Even if petitioner's son was permitted to testify at the hearing that Pavilion provided services consistent with that of a residential health care facility, such evidence would not have altered the legal status of Pavilion such that it should fall

within the confines of 18 NYCRR 360-4.9 (a) (5) (i). Since the exclusion at issue applies only to money received as the result of a legal action against a residential health care facility and there is no corresponding exclusion with respect to an adult care facility, the Commissioner's determination sustaining termination of petitioner's medical assistance coverage should be confirmed.

Crew III, J. P., White, Yesawich Jr. and Spain, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.